UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROBERT 'CHICK' FRITZ INC.,

  Plaintiff,

  v.             Case No. 25-cv-00917-JPG

THE ORIGINAL PICKLE SHOT, INC.,

  Defendant.

## MEMORANDUM AND ORDER

This case is before the Court on Defendant The Original Pickle Shot's Motion for Partial Summary Judgment (Doc. 20) and Plaintiff Robert 'Chick' Fritz's Cross-Motion for Partial Summary Judgment (Doc. 22). Defendant's motion asks the Court to enter judgment in its favor on its counterclaim for declaratory judgment and on Plaintiff's claim for breach of contract. Plaintiff filed a response (Doc. 22), and Defendant filed a reply (Doc. 26). Plaintiff's cross-motion asks the Court to enter judgment in its favor on Defendant's counterclaim for declaratory judgment. Defendant filed a response (Doc. 26), and Plaintiff filed a reply (Doc. 27).

## I. BACKGROUND

On April 13, 2023, Defendant, as the "Supplier," and Plaintiff, as the "Wholesaler," entered into a Distribution Agreement. Pursuant to the Distribution Agreement, Defendant appointed Plaintiff as the exclusive distributor for specified products in a particular territory covering various counties in Illinois.

The Distribution Agreement required Defendant to perform several responsibilities, including using diligent efforts to supply Plaintiff with enough products to meet Plaintiff's reasonable needs in the territory and providing Plaintiff with reasonable amounts of point-of-sale promotional materials to enable the product to compete with comparable brands. It obligated

Plaintiff to "use its best efforts to meet or exceed those annual goals agreed upon between the parties" and "use its diligent efforts to market, promote, and sell [p]roducts."

The Distribution Agreement does not contain a provision identifying the contract's term. Section 8 of the Distribution Agreement explains how the contract may be terminated ("the Termination Provision"). It states as follows:

8. TERMINATION

a. Wholesaler may terminate this Agreement at any time by providing Supplier with 60 days written notice. This 60-day notice period is intended to allow Supplier to make alternative distribution arrangements, and Supplier may elect to terminate for any reason in less than 60 days after receipt of Wholesaler's notice of termination.

b. Supplier may initiate the termination of this Agreement for good cause at any time if Wholesaler fails to substantially comply with its obligations under this Agreement. Supplier shall initiate such termination by providing Wholesaler with written notice that states the effective date of termination, which must be at least sixty (60) days from the date of Supplier's notice, and which explains the reason(s) for termination, and outlines the step(s) Wholesaler must take to cure the deficiencies that justify termination. Following Supplier's notice, Supplier shall have the right to terminate this Agreement on the effective date established by the notice if Wholesaler fails to provide Supplier with a commercially reasonable satisfactory plan for curing the reason(s) for termination within 60 days of Supplier's termination notice period.

c. Supplier may also terminate this Agreement for cause immediately upon written notice upon the occurrence of certain causes not subject to cure, including any of the following: (i) Wholesaler undertakes fraudulent conduct known to Wholesaler's senior management towards Supplier or the Products or takes deliberate action known to Wholesaler's senior management to harm Supplier's market position, goodwill or reputation; (ii) any of Wholesaler's federal, state or local licenses or permits is revoked or suspended for a period exceeding 30 days; (iii) Wholesaler becomes insolvent, institutes bankruptcy proceedings, or is the subject of involuntary bankruptcy proceedings that are not dismissed within sixty (60) days, assigns or attempts to assign assets for the benefit of creditors, or otherwise liquidates its business; (iv) Wholesaler undertakes an Assignment without the written consent required by section 7, provided such consent has not been unreasonably withheld or delayed; (v) Wholesaler fails to pay monies due and owing in accordance to agreed payment terms following a written demand for

payment from Supplier.

> d. In the event that Supplier desires to terminate this Agreement for reasons other than as outlined above, Wholesaler agrees to engage in good faith discussions with Supplier, or, at Supplier's direction, with Supplier's designed successor wholesaler, regarding fair market value for voluntary transfer of the distribution rights for the Products in the Territory from Wholesaler to Supplier's designated successor wholesaler, provided that nothing in this section 8(d) shall obligate Wholesaler to agree to any such transfer. Supplier agrees that it shall not initiate a termination in accordance with this section 8(d) within the first two (2) years of signing this Distribution Agreement.

In a video conference call on February 18, 2025, Defendant informed Plaintiff that it intended to consolidate its distribution network in Illinois and appoint a different distributor of Defendant's products in Plaintiff's exclusive territory. Defendant followed up the conference by sending Plaintiff a letter indicating that it was terminating the Distribution Agreement "[p]ursuant to Section 8(d) of the Distribution Agreement." On February 28, 2025, Plaintiff sent Defendant a letter objecting to the termination of the Distribution Agreement.

In response to Plaintiff's objections, Defendant sent Plaintiff a second termination letter, dated March 6, 2025. The letter stated that Defendant was terminating the Distribution Agreement for cause and expressly declined to outline steps Plaintiff may take to cure the alleged cause. Defendant's designated successor did not attempt to engage in good faith discussions regarding the fair market value for the voluntary transfer of Plaintiff's distribution rights under the Distribution Agreement. Defendant terminated the Distribution Agreement on May 6, 2025.

On April 23, 2025, Plaintiff filed its complaint in the St. Clair County Circuit Court, alleging that Defendant's termination constituted a breach of the Distribution Agreement. Defendant removed the case to this Court on May 13, 2025. On June 23, 2025, Defendant filed an answer that asserts counterclaims for declaratory judgment, and in the alternative, breach of

3

contract.

## II.    <u>**LEGAL STANDARD**</u>

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED. R. CIV. P. 56); *accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

In assessing a summary judgment motion, the Court views the facts in the light most favorable to and draws all reasonable inferences in favor of the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 900 (7th Cir. 2011). However, the "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (internal quotation marks and citation omitted)).

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the nonmoving party carries

4

the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. First, it may present evidence that affirmatively negates an essential element of the nonmoving party's case. *See* FED. R. CIV. P. 56(c)(1)(A). Second, it may point to an absence of evidence to support an essential element of the nonmoving party's case without submitting any evidence. *See* FED. R. CIV. P. 56(c)(1)(B). Where the moving party fails to meet its strict burden, the Court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

## III.    ANALYSIS

The issue raised by the parties' motions is whether the Distribution Agreement was terminable at will. Defendant believes it was; Plaintiff believes it was not. To decide this question, the Court will apply Illinois law. *See Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machs. Corp.*, 547 F.3d 882, 886 (7th Cir. 2008). In Illinois, the general rule is that "[c]ontracts of indefinite duration are terminable at the will of either party." *Jespersen v. Minnesota Min. & Mfg. Co.*, 700 N.E.2d 1014, 1016 (Ill. 1998). However, there is an exception. If a contract has no fixed duration but "provides that it is terminable *only* for cause or upon the occurrence of a specific event," the contract is interpreted to be "terminable only upon the occurrence of the specified event and not at will." *Id.*

The Court finds that the Termination Provision is not sufficient to take the Distribution Agreement out of the general rule that it is terminable at will. The first three clauses of the Termination Provision—8(a), 8(b), and 8(c)—are "permissive and equivocal." *Id.* That a party "may" terminate for the stated grounds creates an inference "that those grounds are not the sole

5

or exclusive basis for termination." *Id.*

The fourth provision—8(d)—is a catch-all provision, but it does not limit Defendant's right to terminate the Distribution Agreement. In fact, it does not impose any duty on Defendant. It merely states that, if Defendant desires to terminate the Distribution Agreement for a reason other than those outlined in 8(b) and 8(c), *Plaintiff must engage in good faith discussions* with Defendant or Defendant's designated successor wholesaler, regarding the fair market value of the voluntary transfer of the distribution rights. This language does not constitute a "clear statement that the contract can only be terminated based upon the occurrence of certain conditions or events." *Beach Forwarders, Inc. v. Serv. by Air, Inc.*, 76 F.4th 610, 614 (7th Cir. 2023).

Since the Distribution Agreement was terminable at will, it could be terminated by either party with reasonable notice. *See All Line, Inc v. Rabar Corp*, 919 F.2d 475, 479 (7th Cir. 1990); *Goodman v. Motor Prods. Corp.*, 132 N.E.2d 356, 362 (Ill. App. Ct. 1956). Here, Defendant provided plaintiff with more than 60 days' notice of its intent to terminate the Distribution Agreement. That is sufficient notice under Illinois law. *See All Line*, 919 F.2d at 479 (finding six-day notice of termination adequate).

Plaintiff argues that this reading of the Distribution Agreement renders sections 8(b) and 8(c) of the Termination Provision a nullity. The Court disagrees. There are numerous economic reasons for a terminable at-will contract to contain cure and notice provisions to guide the parties. *See Beach Forwarders*, 76 F.4th at 615 ("For instance, the parties may wish to establish a procedure by which one party may obtain the other's compliance before cutting bait. Or the parties may prefer a set time frame to encourage compromise. Alternatively, the parties simply

6

may want to promote the mitigation of damages.").

The undisputed facts, construed in the light most favorable to Plaintiff, establish that: (1) the Distribution Agreement was terminable at will by either party with reasonable notice; and (2) Defendant provided reasonable notice. Thus, Defendant did not breach the Distribution Agreement, and it is entitled to summary judgment on both its declaratory judgment claim and on Plaintiff's breach of contract claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant The Original Pickle Shot's Motion for Partial Summary Judgment (Doc. 20) and **DENIES** Plaintiff Robert 'Chick' Fritz's Cross-Motion for Partial Summary Judgment (Doc. 22). It **DIRECTS** the Clerk of Court to enter judgment declaring the following at the close of the case:

> The Distribution Agreement was terminable at will by either party with reasonable notice. The Original Pickle Shot, Inc., provided reasonable notice of its intent to terminate the Distribution Agreement. Therefore, the Distribution Agreement was properly terminated by The Original Pickle Shot, Inc.

The Court is unsure whether any part of this case remains. Defendant's counterclaim asserts both a declaratory judgment claim and a breach of contract claim. The counterclaim states that the breach of contract claim is asserted in the alternative. However, Defendant's motion seeks only partial summary judgment. Accordingly, the Court **ORDERS** Defendant to **SHOW CAUSE** on or before July 20, 2026, why it should not enter judgment and close this case.

**IT IS SO ORDERED.**
**DATED**: June 29, 2026

_____
**J. PHIL GILBERT**

7

**United States District Judge**